# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CT-01716-SCT

*HAROLD OUSLEY*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 07/21/2004 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STEPHEN NICK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JACOB RAY |
| DISTRICT ATTORNEY: | JOYCE IVY CHILES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/26/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1. After Harold Ousley's lawyer, a public defender, accepted employment as an assistant district attorney, Ousley moved for disqualification of the entire district attorney's office. The trial court refused to disqualify, and the defendant was convicted of murder and of being a felon in possession of a deadly weapon, receiving a sentence of life imprisonment plus three years. Ousley appealed on several grounds, including the trial court's refusal to disqualify, and the Court of Appeals affirmed. We granted certiorari to clarify the issue of imputed disqualification.

**BACKGROUND FACTS AND PROCEEDINGS**

¶2. Harold Ousley was indicted for murder and for being a felon in possession of a deadly weapon.[1] Because Ousley was indigent, his case was referred to the public defender's office in May 2003. Washington County Public Defender William LaBarre assigned Carol White-Richard to the case. It is uncontested that, as of January 2004, an attorney-client relationship existed between White-Richard and Ousley, and that the two had discussed confidential information regarding his case.

¶3. In January 2004, White-Richard informed LaBarre that she had accepted new employment as an assistant prosecutor with the district attorney's office. In February 2004, White-Richard began her employment as a prosecutor. She did not work on any of the cases (including Ousley's) she had worked on while she was with the public defender's office. However, she did assist in the prosecution of other cases which had been active in the public defender's office while she was there.

¶4. Labarre contacted White-Richard and informed her that her involvement in cases that had been active while she was with his office created a conflict of interest. White-Richard contacted the general counsel for the Mississippi Bar, who advised her that, even though she may not have entered an appearance in those cases as a public defender, she had had access to the client's confidential information while working in the public defender's office and therefore had a conflict of interest. Accordingly, White-Richard ceased working on cases

[1]For a detailed discussion of the pertinent facts, see *Ousley v. State*, 2007 Miss. App. LEXIS 462 (Miss. Ct. App. July 17, 2007).

involving the public defender's office which were opened prior to her departure on February 1, 2004.

¶5. An attorney with the public defender's office then filed a motion in the Ousley case, seeking disqualification of the entire district attorney's office. At the hearing on the motion, White-Richard testified that she had never discussed Ousley's case with anyone at the district attorney's office. The assistant district attorney assigned to prosecute the Ousley case testified that White-Richard had never discussed the case with him.

¶6. The circuit court denied Ousley's motion to disqualify. On appeal, the Court of Appeals affirmed the trial court's decision. Although we agree with the Court of Appeals' decision to affirm the trial court, we granted certiorari to clarify the issue.

## ANALYSIS

¶7. It is not uncommon for attorneys employed as public defenders to accept new employment as prosecutors. When that happens, there necessarily will be some active cases in the district attorney's office which were active prior to the change in employment.

¶8. No citation of authority is necessary for the obvious proposition that a conflict of interest will exist for a prosecutor who previously represented a particular defendant in a particular case. This is particularly true where, as here, the prosecutor gained actual knowledge of the defendant's confidential information. Under such circumstances, the lawyer has a conflict of interest and may not, after changing employment, begin to prosecute the former client. That did not happen – and is not an issue – in this case. The problem becomes more difficult, however, where the lawyer had no involvement in a particular case either while with the public defender's office or after joining the district attorney's office.

3

¶9.     In *Aldridge v. State*, 583 So. 2d 203 (Miss. 1991), this Court squarely addressed the problem by stating:

> [I]f the State can meet the **heavy burden** of showing that the accused's confidentiality remained unscathed, then we will not require the district attorney to disqualify himself or his office. This burden, however, is great and is not to be treated lightly by trial courts. The State must show that the assistant district attorney had absolutely no participation in the case, from the time of withdrawal through adjudication; divulged no confidential information; and **notified the other party promptly upon becoming aware of the conflict of interest**. Cf. Rule 1.11(a) & (b), Rules Prof. Conduct.

*Id*. at 205.  Thus, under the facts of this case, *Aldridge* requires disqualification of the entire district attorney's office, unless the State demonstrates that the former public defender:  (1) "had absolutely no participation in the case"; (2) "divulged no confidential information"; and (3) "notified the other party promptly upon becoming aware of the conflict of interest." *Id*.

¶10.     In the case before us today, the first two requirements unquestionably are met.  The uncontradicted evidence in the record is that, after joining the district attorney's office, White-Richard had no participation in, and divulged no information concerning, Ousley's case.  This leaves us to determine whether the third requirement was met.

¶11.     We are not told whether or not White-Richard directly communicated to Ousley her decision to join the district attorney's office.  The record discloses only that, prior to her departure from the public defender's office, Richard notified Labarre of her new employment. Thus, we must look elsewhere to learn whether Ousley was promptly informed and, if so, whether the method of providing him the information passes muster under *Aldridge*.

4

¶12.    On May 18, 2004, Ousley's new public defender filed a motion asking the trial court to disqualify the district attorney and appoint a special prosecutor. Since the motion was filed on Ousley's behalf, we may assume that Ousley was aware of it. This Court faced a similar circumstance in *Wagner v. State*, 624 So. 2d 60, 65 (Miss. 1993), wherein the prosecutor had represented the defendant prior to joining the district attorney's office. In discussing the notice requirement announced in *Aldridge*, the *Wagner* Court stated: "The fact that Wagner was able to bring a motion to recuse pretrial is sufficient to establish timely notice." *Id*. at 65.

¶13.    Applying the *Wagner* rule here, we find that Ousley's motion to disqualify – which was filed more than two months prior to trial – is ample evidence that he received the required notice of the potential conflict. Thus, the three requirements announced in *Aldridge* were met, and the trial judge was correct in denying Ousley's motion to disqualify the district attorney's office.

## CONCLUSION

¶14.    Although we affirm the trial court and the Court of Appeals, we granted certiorari to point out that notification to the former client's new counsel, in and of itself, will not suffice. There must be evidence that the potential conflict was communicated to the client sufficiently in advance of trial to allow time for the client to consult with new counsel and consider whether to file a motion to disqualify. Whereas the filing of a motion to disqualify will serve to prove the notice in some cases, the preferable and safer course of action would be for a lawyer in White-Richard's position to promptly communicate the potential conflict directly to the former client.

¶15. Because the record clearly demonstrates that all three requirements were met, we affirm the Court of Appeals as well as the conviction of the trial court and the sentence on all grounds discussed by the Court of Appeals including the trial court's decision to deny Ousley's motion to disqualify the Office of the District Attorney of Washington County.

¶16. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. COUNT I: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. EASLEY, J., CONCURS IN PART AND RESULT.**