# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-KA-00448-SCT

*KEVIN ELDRIDGE*

*v.*

*STATE OF MISSISSIPPI*


DATE OF JUDGMENT: 03/28/2008
TRIAL JUDGE: HON. SAMAC S. RICHARDSON
COURT FROM WHICH APPEALED: RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: CHRIS N. K. GANNER
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: W. GLENN WATTS
DISTRICT ATTORNEY: MICHAEL GUEST
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: REVERSED AND REMANDED - 01/20/2011
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**BEFORE GRAVES, P.J., RANDOLPH AND PIERCE, JJ.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Kevin Doyle Eldridge was convicted of one count of burglary and sentenced as an habitual offender to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC). The prosecution was represented by Marty Miller and Dan Duggan. At the time of trial, Eldridge was represented by Darla Palmer. On October 27, 2008, Eldridge filed a motion for judgment notwithstanding the verdict and for a new trial. Eldridge alleged that, prior to Darla Palmer's representation, Dan Duggan, then a contract public defender for Rankin County, had met with him and discussed his case. Therefore,

Eldridge argued that Duggan should have recused himself. The trial court subsequently denied Eldridge's motion. Eldridge now appeals.

## FACTS AND PROCEDURAL HISTORY

¶2. On May 17, 2007, Eldridge was indicted for burglary of Selma Yelverton's mobile home in Rankin County. On June 19, 2007, Duggan, then a contract public defender in Rankin County, met with Eldridge at the county jail. That same day, Duggan filed Eldridge's waiver of arraignment and entry of plea on a noncapital case and the trial court's order setting trial, status conference and pretrial conference. The trial originally was set for October 9, 2007, however, Mary Jane Lemon,[1] Duggan's law partner, filed an agreed order continuing and resetting the trial for March 11, 2008. At some time prior to Eldridge's trial, Duggan left the public defender's office to work as a Rankin County Assistant District Attorney. On March 13, 2008, Eldridge went to trial and was represented by Darla Palmer. The State was represented by Marty Miller and Duggan. After a one-day trial, Eldridge was found guilty of burglary by a Rankin County jury and sentenced as an habitual offender to twenty-five years in the custody of the MDOC. On October 27, 2008,[2] Chris Ganner, on behalf of Eldridge, filed his entry of appearance and motion for judgment notwithstanding the verdict and for a new trial (JNOV). In his motion, Eldridge alleged that, based on the fact

---

[1] Apparently, Lemon was Eldridge's attorney of record. However, there are no documents in the Court's file specifically showing Lemon as the attorney of record.

[2] Uniform Circuit and County Court Rule 10.05 provides that the defendant has ten days from the entry of judgment to file its motion for a new trial. October 27, 2008, is well outside the ten-day time frame for filing a motion for a new trial where the final judgment was entered on March 31, 2008.

that Duggan previously had met with him and discussed his case, Duggan should have recused himself.

¶3. On February 22, 2010, the trial court held a hearing on Eldridge's motion for JNOV. At the hearing, Eldridge testified that during his and Duggan's meeting on June 19, 2007, they discussed his case, including defenses, the reason Eldridge did not receive bond, and the fact that Eldridge is an habitual offender. Eldridge further testified that he met with Duggan again in July of 2007, at which time they again discussed his case and decisions that needed to be made.

¶4. However, Duggan alleged that at the time of trial, when he was acting as an assistant district attorney, he did not remember speaking with Eldridge at the jail. Upon being reminded by Lemon that he did speak with Eldridge, Duggan testified that Eldridge was Lemon's client and that he spoke with Eldridge only once, at the request of Lemon. Duggan stated:

> She [Lemon] had talked with Eldridge and relayed an offer to him. I do not recall what the offer was on this particular case. But she asked me to step into the room and discuss the matter with Mr. Eldridge. She told me what the offer was . . . . And we discussed the matter a little while about the offer and whether or not he should take it or not.
> Now as to specifics as to what the case entailed, I do not recall exactly what was stated. But I expressed an opinion to him as to whether or not he should take the offer.

Duggan also testified that in order to express his opinion on whether or not to take the offer, Lemon had to relay some facts to him regarding Eldridge's case. Yet, when specifically asked if he remembered any confidential information that Eldridge may have given him, Duggan responded that he did not.

3

¶5.     After hearing testimony and argument from both parties, the trial court found that both the defendant and the prosecution shared the responsibility of raising the conflict-of-interest issue at the trial and that there was no evidence that tended to show that Duggan received any confidential information from Eldridge. The trial court further found that Duggan had testified that his only role in representing Eldridge was an administrative role, handling an arraignment and a trial setting. In so finding, the trial court denied Eldridge's motion for JNOV and for a new trial. Eldridge now appeals.

## DISCUSSION

¶6.     On appeal, Eldridge argues that the trial court erred by refusing to grant his motion for JNOV, or in the alternative a new trial. Specifically, Eldridge claims that, because he previously had consulted with one of the prosecuting attorneys regarding his case when that prosecuting attorney was a public defender, the trial court should have granted him a new trial.  In addition, Eldridge claims that his trial counsel was prejudicially ineffective by her failure to become aware of a conflict of interest with one of the prosecuting attorneys and failing to raise it with the trial court.

¶7.     This Court will reverse only if the trial court's findings that no confidential information was transmitted from the defendant to the prosecuting attorney were clearly erroneous. *Vandergriff v. State*, 920 So. 2d 486, 492-493 (Miss. Ct. App. 2006). We find that "this Court cannot with confidence conclude that no confidential information regarding appellant's pending . . . charge was acquired by [one of the prosecuting attorneys]." *Gray v. State*, 469 So. 2d 1252, 1255 (Miss. 1985). Because we agree with Eldridge regarding his

4

first assignment of error, we will not address Eldridge's ineffective-assistance-of-counsel claim.

¶8. It is well-settled that "a prosecuting attorney is disqualified from acting in a criminal case if he has previously represented or has been consulted professionally by the accused with respect to the offense charged." *Id.* at 1254. This Court consistently has held that "[t]he subsequent prosecution by an attorney who has previously gained confidential information from the accused relative to the charges against him is inherently incompatible with the right of a criminal defendant to receive a fair trial." *Id.*; *see also Aldridge v. State*, 583 So. 2d 203, 205 (Miss. 1991); *Jones v. State*, 962 So. 2d 1263, 1271 (Miss. 2007).

¶9. However, if the State can meet the burden of showing that the accused's confidentiality remained intact, then this Court will not require the prosecuting attorney to disqualify or recuse himself or herself. *Aldridge*, 583 So. 2d at 205. To make this showing, "the State must show that the assistant district attorney had absolutely no participation in the case, from the time of withdrawal through adjudication; divulged no confidential information; and notified the other party promptly upon becoming aware of the conflict of interest. *Ousley v. State*, 984 So. 2d 985, 988 (Miss. 2008) (quoting *Aldridge*, 583 So. 2d at 205). Upon a complete examination of the record, we find that the State cannot meet the three-part test set forth in *Aldridge.*

¶10. First, "the State must show that the assistant district attorney had absolutely no participation in the case, from the time of withdrawal through adjudication." *Ousley v. State*, 984 So. 2d 985, 988 (Miss. 2008) (quoting *Aldridge*, 583 So. 2d at 205). While the record is unclear as to when Duggan, in his role as a public defender, withdrew from representing

5

Eldridge, it is clear that Duggan, now an assistant district attorney, actively participated in the prosecution of Eldridge. The record indicates that, during the trial, Duggan questioned Vernon Ball, Eldridge's stepfather, on direct examination. Duggan also presented closing arguments to the jury. In fact, Miller, the other assistant district attorney who prosecuted Eldridge, asked Duggan to sit in on Eldridge's case as second chair, which Duggan did.

¶11. In light of Duggan's participation in the prosecution of Eldridge, this Court finds that the State cannot and did not meet the first prong of the *Aldridge* test. *Id.* Even assuming that the State can show the remaining two factors, *Aldridge* states that the State must show all three. *Id.* Therefore, we reverse the trial court's denial of Eldridge's motion for a new trial and remand for a new trial.

## CONCLUSION

¶12. Because we cannot conclude with confidence that no confidential information regarding Eldridge's case was acquired by Duggan, we reverse Eldridge's conviction and remand for a new trial.

¶13. **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**

6