# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 21, 2024

Lyle W. Cayce
Clerk

No. 23-60040

United States of America,

*Plaintiff—Appellee*,

*versus*

Mike Austin Anderson,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:21-CR-62-1

Before Higginbotham, Higginson, and Duncan, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

This is an appeal of convictions related to the shooting of Julian McMillan by Mike Anderson following an argument in Conehatta, Mississippi, part of the Choctaw Indian Reservation. Anderson was convicted after a jury trial of assault with a dangerous weapon and assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113 and 1153, as well as using a gun during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Defendant-Appellant Mike Anderson contends that (1) the district court erred in finding that the prosecution produced sufficient evidence at trial for the jury to return guilty verdicts, despite the district

No. 23-60040

court's self-defense instruction, and (2) the district court inappropriately denied Anderson's pretrial motion to recuse the lead prosecutor, Assistant United States Attorney ("AUSA") Kevin Payne, and the entire United States Attorney's Office ("USAO") for the Southern District of Mississippi, due to Payne's representation of Anderson and his father on different occasions while he was employed as a public defender in Choctaw Tribal Court. Because we find no error in the court's rulings on Appellant's sufficiency of the evidence challenge or on his recusal motion, we AFFIRM his convictions and sentence.

## I.

In June 2021, Appellant was charged in a six-count indictment with: assault with a firearm with intent to commit murder on the Choctaw Indian Reservation, 18 U.S.C. §§ 1153 and 113(a)(1) (Count 1); assault with a firearm with intent to do bodily injury on the Choctaw Indian Reservation, §§ 1153 and 113(a)(3) (Counts 2 and 5); assault resulting in serious bodily injury on the Choctaw Indian Reservation, §§ 1153 and 113(a)(6) (Count 3); using a firearm during and in furtherance of a crime of violence, § 924(c)(1)(A)(iii) (Count 4); and brandishing a firearm in relation to a crime of violence, § 924(c)(1)(A)(ii) (Count 6). After a three-day trial, a jury convicted Appellant of Counts 2, 3, and 4 on October 5, 2022. On January 27, 2023, the district court entered a judgment sentencing Appellant to 144 months in prison—24 months each for Counts 2 and 3, to run concurrently with each other, and 120 months for Count 4, to run consecutively to the prison term for Counts 2 and 3. The court also sentenced Appellant to 60 months supervised release and a $500 fine.

It is undisputed that, over the course of the evening of May 28, 2021 and the early hours of May 29, 2021, the following individuals were present: Appellant, Mike Anderson; the victim, his friend Julian McMillan;

McMillan's girlfriend, Susanna Shoemake; Susanna's sister, Tonya Anderson; and Tonya's daughter, Caitea Anderson. Appellant is related to Tonya and Caitea. Julian McMillan and Caitea Anderson testified at trial.

The shooting occurred in the very early hours of May 29, 2021, after a long evening of drinking. The following facts are undisputed: On the evening of May 28, 2021, Shoemake and McMillan were socializing and drinking at Tonya Anderson's house. Appellant contacted McMillan to ask him to bring cigarettes to Appellant's home. Shoemake and McMillan drove to Appellant's home, where the three socialized and drank. When they realized they were running low on alcohol, Appellant and McMillan decided to drive back to Tonya Anderson's house to retrieve beer and whiskey that Shoemake and McMillan had left there earlier.

Testimony differed as to where the men stopped on their way to Tonya Anderson's house—McMillan testified that he went to Shoemake's mother's house to use the bathroom, while Appellant told a law enforcement officer that it was a "meth house"—but it is undisputed that during the stop, McMillan went inside while Appellant stayed in the car. Subsequently, the two men drove to Tonya Anderson's house, where the shooting later occurred.

McMillan testified that, at Tonya Anderson's house, Appellant and Tonya Anderson began arguing and that he "[tried] to get Mike to get in the car so that we can go." He testified that he could not recall if he got a gun during the argument, but that Appellant retrieved the gun from inside the vehicle and then pointed it at him. He testified that, as he tried to move away from Appellant, Appellant shot him—first in the finger, then in the knee. He testified that Appellant shot him a total of four times as he attempted to crawl away. Then, he said, Appellant got in Shoemake's car and drove away, and

some time later Shoemake returned to the scene in her car and took him to the hospital.

Appellant's own account of events rested largely on two pieces of evidence introduced by the government through the trial testimony of Special Agent Terrel Allen, the FBI agent who investigated the shooting: Tonya Anderson's statement to Agent Allen that McMillan fired the gun in the air two times before Appellant took it from him, and Appellant's own statement during an interview with Agent Allen that he heard two gunshots and then "blacked out." Neither Appellant nor Tonya Anderson testified at trial, so their accounts are preserved only through Appellant's video interview with Agent Allen, which was played during Allen's testimony, and Agent Allen's description of Tonya's account.

## II.

Before proceeding to trial, Appellant sought recusal of AUSA Kevin Payne and his entire office due to a purported conflict of interest resulting from Payne's prior representation of Anderson in Choctaw Tribal Court.

In his Motion to Order Recusal, Appellant urged that Payne should be disqualified because he had represented Appellant "in the defense of criminal charges levied against him in the Choctaw Tribal Court in Philadelphia, Mississippi on multiple occasions" and had also represented Appellant's family members as Director of the Choctaw Legal Defense. Appellant further claimed that "[i]n the course of his duties, AUSA Payne was privy to confidential information about Mike Anderson and his family." Relying on Rules 1.9 and 1.10 of the Mississippi Rules of Professional Conduct, Appellant contended that the entire USAO for the Southern District of Mississippi must recuse itself from the prosecution of the charges against him.

No. 23-60040

Appellant's motion was heard by a magistrate judge. During the hearing, Appellant testified that he was represented by Payne during a bond revocation hearing in 2006 and that in preparation for that hearing, he and Payne met multiple times at Choctaw Legal Defense. During those meetings, he testified that he divulged confidential information regarding his case. He also testified that Payne represented his former romantic partner, and his father in criminal matters, and that he shared confidential information with Payne in aid of his father's defense. Appellant also stated that "Mr. Payne had previously informed my significant other, Matilda King, that if he should ever get his hands on me as a prosecution [sic] that he would hang me." Appellant urged that "this is not about seeking justice any more [sic], it has become at a personal level that he has a personal animosity against the Anderson family which would not be fair to me."

The Government called Ashley Lewis, the Director of the Choctaw Legal Defense, as its witness. Lewis testified that a review of the Choctaw Legal Defense records indicated that Payne had not represented Appellant, but that Payne had represented Appellant's father. On cross-examination, Lewis testified that Payne did represent Appellant at an arraignment, and that Payne represented Appellant's father in 2004. At the end of the hearing, the magistrate judge took the matter under advisement. Both parties filed post-hearing supplemental briefs.

The magistrate judge denied Appellant's motion in a written order, finding that Payne represented Appellant but that representation "did not rise to the level of personal and substantial participation in the case," and that even if it had, Appellant did not prove that a substantial relationship existed between the subject matter of Payne's prior representation of Appellant and the present pending federal charges. Accordingly, the magistrate judge determined that Payne was not barred from representing the Government by Mississippi Rule of Professional Conduct 1.9. After determining that any

conflict concerning the USAO was governed by Mississippi Rule of Professional Conduct 1.11, and not by 1.10 as Appellant argued, the magistrate judge relied on *Ousley v. State*, 984 So. 2d 985, 987-88 (Miss. 2008), determining that the Government proved that "Payne has had no meaningful participation, and no substantive communications with the defendant in any of the criminal matters submitted by [Appellant]" and that "during the pendency of the various criminal matters involving [Appellant] and his family and friends, no confidential information was divulged."

Appellant filed a motion pursuant to 28 U.S.C. § 636(b)(1)(C) to revoke the magistrate judge's denial of his motion, urging the district court to review the hearing held before the magistrate judge. After determining that the magistrate judge decided Appellant's motion under 28 U.S.C. § 636(b)(1)(A), not (b)(1)(C), the district court applied a clearly erroneous or contrary to law standard of review and denied Appellant's motion to revoke. Relying on *In re American Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992), the district court held that the magistrate judge's ruling was not contrary to law because "even assuming Payne had represented Anderson, Anderson failed to factually establish that the prior case was substantially related," and "it was not clearly erroneous to credit the Government's evidence over Anderson's testimony." *See also Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1029 (5th Cir. Unit B June 1981) ("Only when the moving party delineates with specificity the subject matters, issues, and causes of action presented in former representation can the district court determine if the substantial relationship test has been met."), *overruled on other grounds by Gibbs v. Paluk*, 742 F.2d 181 (5th Cir. 1984). The case then proceeded to a jury trial. Appellant was convicted on three of six charges in the indictment, and sentenced, as described above, to 144 months in prison, 60 months supervised release, and a $500 fine. Anderson timely appealed.

No. 23-60040

### III.

Anderson first challenges the sufficiency of the evidence used to convict him. The parties agree that this is a properly preserved sufficiency of the evidence challenge, and therefore it must be reviewed de novo. *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007). Anderson argues that he acted in self-defense, and that the government did not prove beyond a reasonable doubt that he did not act in self-defense. Accordingly, Anderson asks the court to vacate his convictions.

In our review of whether there is sufficient evidence to support a criminal conviction, this court must "determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." *United States v. Pruneda-Gonzalez*, 953 F.2d 190, 193 (5th Cir. 1992). "It is not necessary that the evidence exclude every rational hypothesis of innocence or be wholly inconsistent with every conclusion except guilt, provided a reasonable trier of fact could find the evidence establishes guilt beyond a reasonable doubt." *Id.*

In making this determination, a court should "accept all credibility choices that tend to support the jury's verdict," recognizing that the jury was "free to choose among all reasonable constructions of the evidence." *United States v. Sneed*, 63 F.3d 381, 385 (5th Cir. 1995) (citation omitted). We have explained that the jury has the "unique role" of judging the credibility of witnesses and deciding how much weight to give each witness's testimony. *United States v. Layne*, 43 F.3d 127, 130 (5th Cir. 1995) (citation omitted). "Generally speaking, '[w]hat a jury is permitted to infer from the evidence in a particular case is governed by a rule of reason, and juries may properly 'use their common sense' in evaluating that evidence.'" *United States v.*

7

*Villasenor*, 894 F.2d 1422, 1425 (5th Cir. 1990) (quoting *United States v. Henry*, 849 F.2d 1534, 1536 (5th Cir. 1988)).

Here, Appellant does not challenge the jury instructions given, only whether the evidence supports the jury's finding that he did not use self-defense. However, as a preliminary matter, it is worth noting that the court properly instructed the jury on self-defense, as follows:

> [T]he use of force is justified when a person reasonably believes that force is necessary for the defense of oneself or another against the immediate use of unlawful force; however, a person must use no more force than appears reasonably necessary under the circumstances.

> Force likely to cause death or great bodily injury is justified in self-defense only if a person reasonably believes such force is necessary to prevent death or great bodily harm. The government must prove beyond a reasonable doubt that the defendant did not act in self-defense.

This is the exact language that appears in the Pattern Jury Instructions. Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 1.39 (2019); *see United States v. Ramos*, 537 F.3d 439, 465 (5th Cir. 2008).

Appellant argues that the prosecution did not prove beyond a reasonable doubt that he did not act in self-defense because the testimony of McMillan and Caitea Anderson was not credible, and because the prosecution did not call as a witness Tonya Anderson, who had told Agent Allen that McMillan fired the gun in the air twice before Appellant took possession of it. He suggests that the veracity of McMillan's testimony was likely compromised by the immunity McMillan was granted against a felon-in-possession gun charge, as well as by his intoxication at the time of the event. Further, Appellant argues that the district court's finding at

8

sentencing that "[i]t seems like McMillan pulled the gun first" supports Appellant's self-defense theory.

As to Caitea Anderson, Appellant argues that she provided "confusing and contradictory testimony," which contrasted with a written statement she had provided to the police previously on several issues, including whether, before shooting McMillan, Appellant had fired shots "into the air" (her claim in the written statement) or "into the ground" (as she testified).

Appellant points out other discrepancies in Caitea's statement and her testimony that he argues diminish her credibility. First, she testified that Appellant pressed the gun against Tonya Anderson's forehead, but she did not mention that in her statement. Second, she testified that Appellant brought beer from Tonya's house to Shoemake's car before the shooting, but in her statement, she said he dropped the beer on the ground before going to the car. Third, she testified that she was "in the car" when she witnessed gunshots, but she then testified that she did not know where she was. Finally, Appellant argues that Tonya Anderson's statement to Agent Allen—that McMillan shot the gun in the air twice before Appellant took possession of it—"would have supported Mike's self-defense theory," and suggests that this is a reason why the prosecution did not call her as a witness.

A review of the record and trial transcript shows that Appellant's conviction was supported by sufficient evidence. Appellant correctly points out that Caitea Anderson's testimony was "confusing and contradictory." Caitea is deaf, and the attorneys' questions were typed for her by an interpreter. She typed answers that were read to the court. There were multiple instances where the testimony was unclear. As an example:

> Q. How long when you came outside before these shots were fired?

A. I came with my mom, see what going on with Mike and
Julian about beer. That all.
Q. Again, I'm sorry if it's confusing, but I'm asking how long -
- how much time passed between when you came outside when
the gun went off?
A. That my mom woke me up and I came with my mom.

But she also testified, unequivocally and multiple times, that she saw
Appellant get the gun out of the car, that she saw McMillan try to retrieve
the gun from Appellant, and that she saw Appellant shoot McMillan after he
was on the ground. Defense counsel cross-examined her about her earlier
written statement and presented her with a written copy for impeachment
purposes. The potential inconsistencies between her testimony and her
previous written statement were fully probed at trial, in front of the jury.

Other testimony and evidence presented at trial make clear that the
jury had sufficient evidence to determine that Appellant was not acting in
self-defense when he shot McMillan. McMillan testified that he was on the
ground, attempting to crawl away, while Appellant shot him multiple times.
A nurse at the hospital where McMillan was treated testified that he had
multiple gunshot wounds: "three wounds to his left leg, one to his right leg,
an abrasion on his left wrist; and then he had an abrasion on one of his toes
and one of his fingers." The prosecution entered into the record photos of
McMillan's injuries and medical records describing the injuries. The
prosecution showed the jury photographs of the crime scene that feature a
series of spent shell casings and pools of blood from the driveway to the front
lawn, a distance of several feet. The photos are consistent with McMillan's
testimony that Appellant continued shooting at him even as he tried to get
away from him.

Even if the jury had credited Appellant's version of events as
summarized by Agent Allen's testimony—that McMillan fired two shots into

the air, then Appellant took the gun from him and began shooting him—a jury could find beyond reasonable doubt that Appellant's shooting of McMillan four times as he crawled away, unarmed, was force too excessive to be described as self-defense. *See United States v. Waller*, 605 F. App'x 333, 338 (5th Cir. 2015) (per curiam) ("Even if [the victim] was the initial aggressor, such that [the defendant] was justified in responding with force, a reasonable jury could conclude that [the defendant] forfeited his right to self-defense by using more force than appeared reasonably necessary."). The district court did not err in rejecting Appellant's sufficiency of the evidence challenge.

IV.

Appellant's second challenge to his conviction is that the district court erred when it denied his motion to disqualify the prosecution. As a preliminary matter, we note that Appellant's notice of appeal does not reference the district court's order denying his motion to revoke, and Appellant's opening brief does not include that order in the jurisdictional statement. The notice-of-appeal omission was raised by the Government in a footnote. Appellant did not address the matter in his reply brief. The Government suggests that there is thus a question whether the issue is properly before this court. However, "we have held that an appeal from a final judgment sufficiently preserves all prior orders intertwined with the final judgment." *Tr. Co. of La. v. N.N.P., Inc.*, 104 F.3d 1478, 1485 (5th Cir. 1997). Accordingly, we will reach the merits of Appellant's disqualification argument.

In this circuit, "a district court's ruling upon a disqualification motion is not a matter of discretion." *Am. Airlines*, 972 F.2d at 609 (discussing the disqualification of a private law firm in a civil context). "Rather, the appellate court reviews findings of fact for clear error while carefully examining the

district court's application of relevant ethical standards." *Id.* (internal quotation marks, alteration, and citation omitted). Review of the district court's interpretation of the relevant ethical standards is de novo and governed by state and national ethical standards adopted by the court. *See id.* at 609-10; *United States v. Lanier*, 879 F.3d 141, 150-51 (5th Cir. 2018) (applying de novo review with respect to the legal question of the existence of a prosecutor's conflict of interest). "A district court's factual finding is clearly erroneous if, on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed." *United States v. Murra*, 879 F.3d 669, 680 (5th Cir. 2018) (internal quotation marks and citation omitted).

Both parties, along with the district court and the magistrate judge, rely on the "substantial relationship" test for disqualification outlined in *American Airlines*. In that civil matter, this court held that "[a] party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: 1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations." *American Airlines*, 972 F.2d at 614 (internal quotation marks and citation omitted).

The parties do not dispute that Payne represented Appellant on at least one occasion and that an attorney-client relationship existed at that time. Accordingly, the first element of the *Am. Airlines* test is satisfied. *See* 972 F.2d at 614.

Applying the *American Airlines* framework, as requested by both parties, the burden was thus on Appellant to show that Payne's prior representation of Appellant was "substantially related to the present case." *See id.* If that is established, there is an irrebuttable presumption that relevant confidential information was disclosed during the prior representation. *See id.*

"[A] substantial relationship may be found only after the moving party delineates with specificity the subject matters, issues and causes of action common to prior and current representations and the court engages in a painstaking analysis of the facts and precise application of precedent." *Id.* (internal quotation marks and citation omitted).

This court considers the substantial relationship test under the relevant local rules. *See id.* The Southern District of Mississippi has expressly adopted the State of Mississippi's Rules of Professional Conduct. *See* Local Rule 83.5 of the Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi.

Mississippi Rule of Professional Conduct 1.9 states:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
> (a) represent another in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

Miss. R. Pro. Conduct 1.9. According to the Comment to Rule 1.9, "[t]he scope of a 'matter' for purposes of Rule 1.9(a) may depend on the facts of a particular situation or transaction." *Id.* cmt. A court must determine whether "the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." *Id.* While "[i]nformation acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client," the mere fact of a prior representation of a "does not

preclude the lawyer from using generally known information about that client when later representing another client." *Id.*

In support of this element, Appellant states, without specificity, that a substantial relationship between the former and present representations exists "because both cases involve criminal charges, and [Appellant] disclosed confidential case related information to Mr. Payne." Appellant cites his own testimony from the motions hearing in support of this contention. The Government argues that Payne's previous representation and the current matter are dissimilar, involving different crimes, with distinct locations and offense conduct, and occurring 14 years apart. In its order, the district court noted that "Anderson says his prior cases were substantially related but never addresses any commonalities," instead relying on "things like the Government's knowledge of his criminal history—which is a matter of public record."[1] It determined that the magistrate judge's order "was well reasoned and based on detailed factual findings. There is no indication that the alleged victims in the 2021 shooting overlap with the victims of the 2007 charges or that the cases bear any other relationship other than Anderson's alleged involvement in them." The district court also found that Payne had previously prosecuted Appellant in tribal court in 2013 and that Choctaw Legal Defense ran a conflict check "which revealed that Payne had not previously represented Anderson" beyond one arraignment.

---

[1] Separately, we note with concern Appellant's statement that "Mr. Payne had previously informed my significant other . . . that if he should ever get his hands on me as a prosecution [sic] that he would hang me." We acknowledge the possibility that, in the context of a prosecutor and a defendant who meet frequently, the existence of a former attorney-client relationship may not be the end of the story as to whether bias exists. But here, Appellant has put forth the *American Airlines* "substantial relationship" test, so we resolve his claim on that test.

A defendant is entitled to have a "disinterested prosecutor." *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987); *see Lanier*, 879 F.3d at 151. While "[i]nstances in which the courts have found it necessary to disqualify a particular United States Attorney are rare," *United States v. Zagami*, 374 F. App'x 295, 297 (3d Cir. 2010), courts have allowed disqualification of government counsel in limited circumstances, *see, e.g.*, *Young*, 481 U.S. at 807 (noting that an actual conflict of interest exists where the appointed prosecutor also represented another party); *United States v. Heldt*, 668 F.2d 1238, 1275 (D.C. Cir. 1981) (per curiam) (noting that it is improper for a prosecutor to participate in a case where he has a pecuniary interest in the outcome and where there are bona fide allegations in a civil action of bad faith in the performance of official duties); *United States v. Prantil*, 764 F.2d 548, 552-53 (9th Cir. 1985) (prohibiting a prosecutor who will act as a witness at trial from prosecution).

As previously emphasized, the parties assert that *American Airlines*, a civil case concerning American Airlines's petition to disqualify its former counsel from representing its competitor in antitrust litigation, governs this appeal. *See* 972 F.2d at 609. Applying the test outlined in *American Airlines*, Appellant does not prevail. He has not demonstrated that Payne's prior representation was substantially related to the present federal prosecution. *See* 972 F.2d at 614. Accordingly, he cannot show that the district court's factual finding is clearly erroneous. Because Appellant has not shown that Payne must be recused from Appellant's prosecution, we need not consider his argument that Mississippi Rule of Professional Conduct 1.11 requires recusal of the entire USAO for the Southern District of Mississippi.

Because we find no error in the court's rulings on Appellant's sufficiency of the evidence challenge or on his recusal motion, we AFFIRM his convictions and sentence.